

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed August 30, 2017**

United States Bankruptcy Judge

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| RHONDA K. JONES, | § | CASE NO. 16-31468-SGJ-13 |
|     Debtor. | § | (Chapter 13) |
| | § | |

---

| | | |
|---|---|---|
| RHONDA K. JONES, | § | |
|     Plaintiff, | § | |
| v. | § | Adversary No. 16-03110-SGJ |
| | § | |
| WELLS FARGO BANK, N.A. AS | § | |
| SERVICING AGENT FOR U. S. BANK | § | |
| NATIONAL ASSOCIATION, AS | § | |
| TRUSTEE FOR STRUCTURED ASSET | § | |
| SECURITIES CORPORATION | § | |
| MORTGAGE LOAN TRUSTEE 2006-RF3, | § | |
|     Defendants. | § | |

## <u>MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT FILED BY DEFENDANTS [DE # 24]</u>

CAME ON FOR CONSIDERATION the Motion for Summary Judgment (the "Motion for Summary Judgment") [DE # 24], filed by Defendants Wells Fargo Bank, N.A. (the "Loan Servicer"), as Servicing Agent for U.S. Bank National Association, as Trustee for Structured Asset Securities Corporation Mortgage Loan Trustee 2006-RF3 (the "Lender") (collectively, the Loan Servicer and the Lender are referred to herein as the "Defendants"), along with the Defendants' Brief and Appendix [DE # 25]; the Response thereto (the "Response") filed by Rhonda K. Jones (the "Debtor" or the "Plaintiff"), along with the Debtor's Brief and Appendix [DE ## 29 & 30]; and the Defendants' Reply Brief [DE # 33]. Having considered the parties' submissions and applicable legal authorities, the court **GRANTS** the Defendants' Motion for Summary Judgment. This ruling is issued pursuant to Federal Rule of Bankruptcy Procedure 7056.

## I.    INTRODUCTION

The above-referenced adversary proceeding (the "Adversary Proceeding") involves what surely is a relatively common fact pattern. Specifically, it involves a prepetition, non-judicial foreclosure sale of the Debtor's homestead in Dallas County, Texas (the "Property") that: (a) occurred *one day before* the Debtor filed a Chapter 13 bankruptcy case; and (b) the Substitute Trustee who conducted the sale accepted a credit bid from the Lender on the Property; but (c) the Substitute Trustee's Deed arguably may not have been "*delivered*" (and definitely was not *filed* in the County property records yet) as of the time that the bankruptcy case was filed.

Through her First Amended Complaint (the "Complaint"), the Debtor seeks a declaration that the prepetition non-judicial foreclosure sale was not *fully complete* and did not effectuate a

2

transfer of *legal* title of the Property and, thus, the Property remains "property of the estate"[1] that can be administered in her case. Specifically, the Debtor argues that, as of the time she filed her bankruptcy case, there was no completed foreclosure sale because the Substitute Trustee's Deed remained *allegedly undelivered* by the Substitute Trustee to the Lender (and also *unrecorded*). Additionally (or alternatively), the Debtor argues that—to the extent there was, indeed, a foreclosure sale that should be deemed *completed*—she nevertheless has standing to assert bona fide hypothetical purchaser status and can avoid the foreclosure sale entirely, pursuant to sections 522(h) and 544(a)(3) of the Bankruptcy Code, due to the simple fact that the Substitute Trustee's Deed remained unrecorded at the time she filed for bankruptcy. To be clear, there is no allegation that the foreclosure sale was not performed in compliance with state law or the underlying loan documents. Finally, the Debtor seeks to recover damages for violation of the automatic stay under 11 U.S.C. § 362(k)(1), because of the Lender's postpetition act of recording the Substitute Trustee's Deed.

The Defendants' Motion for Summary Judgment now before the court argues essentially that, contrary to the Debtor's assertions, the foreclosure sale was fully completed to terminate the Debtor's interest in the Property when the Substitute Trustee *placed and accepted a bid* on the Lender's behalf. More specifically, the Defendants argue that the Substitute Trustee, acting as agent to the Defendants, was entitled to and did both: (a) make and accept a bid for the sale of the Property; and (b) make and accept delivery of the Substitute Trustee's Deed upon its execution on the day of the sale, thus completing the foreclosure sale before the Debtor filed for bankruptcy. In other words, the Debtor retained no interest in the Property that could have accrued to the bankruptcy estate. The Lender's postpetition recordation of the Substitute Trustee's Deed was

---

[1] 11 U.S.C. § 541(a).

ministerial and did not violate the automatic stay—since the Debtor no longer had a property interest.

Furthermore, the Defendants refute the Debtor's additional (or alternative) position that—even if the foreclosure sale was completed prepetition—a hypothetical, bona fide purchaser at the time of the bankruptcy petition (as contemplated in Bankruptcy Code section 544(a)(3)) would be deemed to lack notice of the occurrence of the foreclosure sale because the Substitute Trustee's Deed was unrecorded and, thus, could avoid the sale. While conceding that the Substitute Trustee's Deed remained unrecorded at the petition date, the Defendants argue that ***other duly recorded documents in the chain of title*** would have triggered ***inquiry*** notice and placed a hypothetical purchaser under a duty to make a reasonable inquiry into the status of the original Deed of Trust. This reasonable inquiry, they argue, would have revealed that the foreclosure sale occurred prepetition. Accordingly, the Defendants request the court grant the Motion for Summary Judgment and dismiss the Debtor's Complaint.

For the reasons set forth below, the court grants the Defendants' Motion for Summary Judgment. [2]

### A.    Jurisdiction

Bankruptcy subject matter jurisdiction exists in this Adversary Proceeding, pursuant to 28 U.S.C. § 1334(b). This matter is a core proceeding over which the bankruptcy court may exercise subject matter jurisdiction, pursuant to 28 U.S.C. §§ 157(b)(2)(A), (G), (H), and (O) and the

---

[2] The court notes at the outset that it rarely sees a dispute like this litigated—although surely this must be a common fact pattern.  Perhaps the reason that an argument like the Debtor's is rarely presented is due to section 1322(c)(1) of the Bankruptcy Code—which provides that a chapter 13 debtor's plan may provide for the curing of a default on a claim secured by a security interest in real property that is the debtor's principal residence ***"until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law"*** (emphasis added). The parties in the case at bar have not focused at all upon this Bankruptcy Code section.  Rather, the focus has been entirely upon whether there was actually a completed foreclosure sale and, even if there was, whether the strong arm powers in the Bankruptcy Code permit an avoidance of a completed foreclosure sale when there is no recorded deed as of the bankruptcy petition date.

Standing Order of Reference of Bankruptcy Cases and Proceedings (Misc. Rule No. 33), for the Northern District of Texas, dated August 3, 1984. This bankruptcy court has Constitutional authority to issue a final order or judgment in this Adversary Proceeding, as the claims asserted arise under bankruptcy statutes.[3] Moreover, the court believes that the parties provided necessary consent for the bankruptcy court to enter a final order in this Adversary Proceeding. *See* Complaint [DE # 15], at ¶ 1; Defendants' Answer [DE # 17], at ¶¶ 2-3.

### B. Venue

Venue is proper in this district, pursuant to 28 U.S.C. § 1409(a), as the Debtor filed her Chapter 13 case in this district.

### C. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure, made applicable in this Adversary Proceeding, pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure, requires the entry of summary judgment "if the movants show there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is material if it may affect the outcome of the suit under the governing law. *Smith v. Bd. of Supervisors of So. Univ.*, 656 Fed. Appx. 30, 32 (5th Cir. 2016) (per curiam) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine dispute of material fact exists when the evidence is such that a reasonable fact finder could return a verdict for the non-movant. *Campos v. Webb Cty., Tex.*, 597 Fed. Appx. 787 (per curiam) (5th Cir. 2015) (quoting *Anderson*, 477 U.S. at 248). This court must view the facts presented in the light most favorable to the non-movant (*i.e.,* the Debtor) and draw all reasonable inferences in her favor. *Johnson v. World Alliance Fin. Corp.*, 830 F.3d 192 (5th Cir. 2016). If the

---

[3] 11 U.S.C. §§ 362, 522 and 544.

movants meet their burden, the opposing party must go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *In re Goff*, 579 Fed. Appx. 240, 244 (5th Cir. 2014) (citing *Anderson*, 477 U.S. at 256).

## II. UNDISPUTED MATERIAL FACTS

The following material facts are not in controversy in this Adversary Proceeding.

A.    On May 14, 2004, the Debtor executed a promissory note (the "Note") in favor of CTX Mortgage Company, LLC ("CTX") in the principal amount of $158,110. *See* Exh. A-1, D. App'x 7-9. To secure the Note, the Debtor also executed a deed of trust (the "Deed of Trust") granting the holder of the Note a lien on the Property. *See* Exh. A-2, D. App'x 11-21. On March 16, 2012, CTX assigned the Note and Deed of Trust (together, the "Loan") to the Lender. *See* Exh. A-3, D. App'x 23. The Loan Servicer serviced the Loan for the Lender. *See* Exh. A-4, D. App'x 25-26.

B.    The Debtor failed to make payments on the Note, which led the Loan Servicer to send a notice of default to both the Debtor and her husband individually on September 15, 2014. *See* Exhs. A-5 and A-6, D. App'x 28-31, 33-36. More than a year later, the Debtor had failed to cure her default and, on February 25, 2016, a law firm for the Loan Servicer (Buckley Madole) filed a Notice of Acceleration and Notice of Trustee's Sale, which scheduled the Property for non-judicial foreclosure on April 5, 2016. *See* Exh. B-3, D. App'x 49-51. Buckley Madole also recorded an appointment of substitute trustee on February 25, 2016, and another on February 26, 2016, each naming Brett Baugh, among others, as a substitute trustee (the "Substitute Trustee"). *See* Exhs. B-1 and B-2, D. App'x 43-44, 46-47. On February 29, 2016, Buckley Madole sent the Debtor a letter stating where and when the Property would be sold at foreclosure, enclosing copies

of the Notice of Acceleration and Notice of Trustee's Sale as filed. *See* Exh. B-4, D. App'x 53-54. Buckley Madole also sent a copy of the same letter to the Debtor's husband. *See* Exh. B-5, D. App'x 56-57.

C. In preparation for the foreclosure sale, Buckley Madole, on behalf of the Defendants, sent bidding instructions to the Substitute Trustee. *See* Exh. B ¶ 7, D. App'x 40.

D. On ***April 5, 2016***, the foreclosure sale occurred. As directed in the bidding instructions, the Substitute Trustee, acting for the Lender, submitted a $135,270 credit bid at the foreclosure sale. *See* Exh. B ¶ 8, D. App'x 40. The Substitute Trustee accepted the $135,270 credit bid and executed the Substitute Trustee's Deed dated April 5, 2016. *Id.* The Deed was notarized the same day. Exh. B-7, D. App'x 61-67. The summary judgment evidence seems unambiguous that the Substitute Trustee acted for the Lender as both seller and purchaser on April 5, 2016, pursuant to the power of sale in the Deed of Trust. *See* Exh. A-2, D. App'x 17-18 ¶ 18.

E. The Debtor does not contend that the foreclosure sale was not in compliance with Texas state law or the Deed of Trust.

F. ***One day after the foreclosure sale, on April 6, 2016***, the Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code. *See* Exh. A, P. App'x 2-8, at ¶ E. On April 8, 2016, a paralegal at Buckley Madole executed an Affidavit of Completed Foreclosure. *See* Exh. B-7, D. App'x 63.

G. ***On April 11, 2016,*** several days after the Debtor filed for bankruptcy, the Substitute Trustee's Deed was recorded in the Official Records of Dallas County, Texas. *See* Exh. B-7, D. App'x 61-62.

### III.    RULING AND REASONS THEREFORE

**A.    The Foreclosure Sale Was Completed and Terminated the Debtor's Rights in the Property on the Day Before the Bankruptcy Case was Filed; the Property is not Subject to the Automatic Stay.**

The Bankruptcy Code defines "property of the estate" as including "all legal and equitable interest of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). But the Bankruptcy Code generally leaves the determination of property rights in the assets of a debtor's estate to state law. *Butner v. United States*, 440 U.S. 48, 54-55 (1979) ("Property interests are created and defined by state law"); *see also Zayler v. Dep't of Agric. (In re Supreme Beef Processors, Inc.)*, 468 F.3d 248, 255 (5th Cir. 2006) (citing *Butner*) ("The Supreme Court has emphasized that bankruptcy law is not itself a source of property rights. It functions to adjust existing property rights as defined by extrinsic state or federal law"). Thus, Texas law controls whether the April 5, 2016 foreclosure sale was completed and terminated the Debtor's rights in the Property.

### 1.    When is a Foreclosure Sale Completed?

In Texas, courts have held that a foreclosure sale that is conducted in accordance with:  (a) state law, and (b) a power of sale in a deed of trust is completed and transfers equitable title to a purchaser, even in the absence of a recorded deed of trust.[4] *United States. v. Bishop*, 262 B.R. 401, 404-05 (W.D. Tex. 2000); *see also Peterson v. Black*, 980 S.W.2d 818, 821-22 (Tex. Civ. App.—San Antonio 1998, no writ) ("A sale in accordance with the law and the provisions of the deed of trust transfers equity title to the purchaser in the absence of a deed . . . [w]e conclude that the sale was complete when the foreclosure was conducted in accordance with the laws and the provisions

---

[4] Note that in Texas, a mortgagor does not have redemption rights after the time of an actual foreclosure sale and, additionally, a sale under a deed of trust is not subject to a requirement of judicial confirmation. *See, e.g., Scott v. Dorothy B. Schneider Estate Trust*, 783 S.W.2d 26, 28 (Tex. App. —Austin 1990, no writ). *See also* TEX. PROP. CODE § 51.002.

of the deed of trust"). Seizing upon the verbiage in this case law that references "*equity*" or "*equitable*" title, the Debtor contends that the foreclosure sale may not have terminated her *legal* rights or *legal* title. The Debtor also argues that the act of *delivery* of a deed is required to complete any sale of property, and that it is unclear whether the Substitute Trustee's Deed was actually delivered to the Lender before the filing of the bankruptcy petition (much less filed). While conceding *equitable* title may be held by the Lender, she argues that a trial is necessary to determine whether *legal* title also passed to the Lender or instead remained with the Debtor, ultimately accruing to the bankruptcy estate.

### 2. "Legal" vs. "Equitable" Title and the Misplaced Focus on "Delivery" in this Context.

It is true that, under Texas law, legal and equitable title to property are separate interests. *See Flag-Redfern Oil Co. v. Humble Exploration Co., Inc.*, 744 S.W.2d 6, 8 (Tex. 1987). It is also true that, under Texas law, the execution of a deed of trust severs the legal and equitable estates— with the legal title remaining with the mortgagor and equitable title transferring to the mortgagee. *Id.* at 8. Admittedly, there is ambiguous language in *Bishop* and *Peterson* (cited above) that references the transfer of "equitable" title to a purchaser at a foreclosure sale—perhaps leaving open to question the significance of a "legal" title that remains with a borrower/debtor. However, a focus on the facts of the relevant jurisprudence (in this court's view) diminishes any significance of: (a) the "legal" interest remaining in a borrower/debtor after a valid foreclosure; (b) the follow up act of *delivery* of a substitute trustee's deed after a foreclosure sale; and (c) the ultimate *recordation* of the substitute trustee's deed.

In *Peterson*, in a post-foreclosure context, a borrower on a secured promissory note (Mr. Peterson) sued Mr. Black, an attorney for a secured lender, PNL, who had been retained by PNL to act as a substitute trustee and conduct a foreclosure sale on Mr. Peterson's real property. Mr.

Black did, in fact, conduct the sale and credit bid on behalf of PNL. Mr. Peterson sued Mr. Black alleging Mr. Black breached his duty to conduct a fair sale and acted negligently in his role as substitute trustee. Among other things, Mr. Peterson alleged that Mr. Black ignored other potential bidders. Mr. Black (again, the substitute trustee) defended the lawsuit by arguing, among other things, that *the foreclosure sale was not completed* because the deed had never been filed/recorded. Interestingly, the timeline in the *Peterson* opinion reflects that the foreclosure sale occurred on November 5, 1996, the substitute trustee prepared a deed that same day, but the deed was not notarized until January 15, 1997 and was delivered to PNC around that same time. Thus, there was a delay in *delivery* of the deed, too—although there is no focus in the opinion on the significance of the delay in *delivery* of the deed (there is only focus on the fact that the deed was not *recorded*).

The court ruled that the foreclosure sale was complete, despite failure to record the substitute trustee's deed. Notably, the court first addressed the legal capacity and duties of a substitute trustee:

> A trustee exercising the authority to foreclose in accordance with the terms of a deed of trust does not act merely as an agent or employee of the lienholder but has a separate capacity with a particular legal responsibility. *Hammonds v. Holmes*, 559 S.W.2d 345, 347 (Tex. 1977). The trustee becomes a special agent for both the debtor and the lienholder and must act with absolute impartiality and fairness in conducting a foreclosure. *Id.; Bonilla v. Roberson*, 918 S.W.2d 17, 21 (Tex. App.—Corpus Christi 1996, no writ). . . . A trustee's duties are fulfilled by complying with the deed of trust. *First State Bank v. Keilman*, 851 S.W.2d at 925.

*Id.* at 822. The court next addressed the topic of when a foreclosure sale is complete:

> A sale in accordance with the law and the provisions of a deed of trust transfers equitable title to the purchaser in the absence of a deed. *Pioneer Building & Loan Ass'n v. Cowan*, 123 S.W.2d 726, 730 (Tex. Civ. App. — Waco 1938, writ dism'd judgm't cor.). Furthermore, the failure to record a written deed does not divest the purchaser of title. *Simonds v. Stanolind Oil & Gas Co.*, 134 Tex. 332, 114 S.W.2d 226, 235 (1938); *Clarkson v. Ruiz*,

> 140 S.W.2d 206, 208 (Tex. Civ.App.—San Antonio 1940, writ dism'd
> judgm't cor.). We conclude that the sale was complete when the foreclosure
> was conducted in accordance with the law and the provisions of the deeds
> of trust and Black accepted PNL's bid.

*Id.* Again, while there is some emphasis in this case authority on "equitable" title transferring to a purchaser, the factual context and reasoning seem clear that a foreclosure sale is considered complete so as to give a purchaser superior rights at the time the actual sale event occurs (not when follow-up documentation is completed, delivered, and recorded).

Another case—not cited by the parties—which this court finds extremely significant is *Glenn v. Hollums*, 80 F.2d 555, 556 (5th Cir. 1935). The *Glenn* case does not involve a nonjudicial foreclosure sale—rather, it involved a court-ordered sale of real estate conducted by a sheriff— but the reasoning seems entirely relevant here. In *Glenn*, a lender pursued a judicial foreclosure as to two different farm properties that served as security on two different loans. After a court order permitting sale was obtained, a sheriff's sale was conducted for each property in accordance with the laws of Texas. The Lender made credit bids on the two properties which the sheriff accepted. On one of the two properties, no sheriff's deed was promptly delivered. Each of the farmers/borrowers filed bankruptcy petitions shortly after the sheriff's sales occurred (before the farmers had ever been dispossessed of their properties and, again, in one case, no sheriff's deed had ever been delivered to the lender). The Fifth Circuit ultimately ruled that there was no property remaining to administer in the two farmers' bankruptcy proceedings (even in the one in which the sheriff's deed had *not* been delivered prepetition). The Fifth Circuit stated that:

> In Texas, title acquired at an execution sale may be established by proof of
> a valid judgment, issuance of an execution thereon, a sale thereunder, the
> acceptance of a bid by the sheriff, payment of the costs, and payment of the
> purchase money either in cash or by crediting the judgment with the amount
> bid at the sale. Proof of these matters establishes an 'equitable and superior'
> title in the purchaser. A deed from the sheriff is a ministerial act not
> essential to the investiture of title . . .

By virtue of the sheriff's sales, [the lender/purchaser] concededly acquired an 'equitable and superior' title to the lands prior to the filing of the petitions in bankruptcy. That title was in no sense inchoate. It had vested. It created in the purchaser a property right which can be divested only by due process. It was a title which would support an action for recovery of the land. [Lender's/purchaser's] former lien was extinguished, as was also the debt it secured, to the extent of appellant's bids at the sale. ***The land was no longer the property of the debtors*** . . .

***Nothing remains to be done to complete the superior title which passed by the sheriff's sales, except the purely ministerial act of delivering the sheriff's deed, to which [lender/purchaser] was and is unconditionally entitled, and the sheriff ready to perform, without the institution or maintenance of any further 'proceedings.'*** No confirmation of the sale by the court was necessary. Mere delivery of the deed would unite the legal with the equitable and superior title already vested in appellant. ***As to the bare legal title remaining in the debtors, they are mere trustees for the purchaser. They have no enforceable interest in the lands by virtue of that title.***

*Id.* at 555, 556-57 (emphasis added).

*Glenn* provides a clear interpretation of Texas law that aligns with the Defendants' position. Again, *Glenn* is distinguishable in that it involves a sheriff's sale, not a non-judicial foreclosure sale. But both types of sale involve an involuntary transfer of debtor property as a result of debtor default and, presumably, terminate debtor rights in a similar manner. *See also Garcia v. Garcia de Ortiz*, 257 S.W.2d 804, 808 (Tex. Civ. App.—San Antonio 1953, no writ) ("When the Bank foreclosed its mortgage and bought the property at the sheriff's sale, it acquired not only the legal, but also the equitable title to this land, and at that time the [debtor] owned no interest, either legal or equitable, in the land"); *Willis v. Smith*, 17 S.W. 247, 248 (Tex. 1886) ("The plaintiff's interest in the land acquired by his purchase at execution sale was not destroyed by the failure of the sheriff to return the execution or to execute a deed").

The *Texas Foreclosure Manual* (and case authority cited therein) provides an explanation that is noteworthy here and—not only does it seem focused on nonjudicial foreclosure sales—but

it is more clear conceptually than the rather old cases cited above. It states that the purchaser of real property at a deed-of-trust foreclosure sale "succeeds to the position of the mortgagee" (*i.e.,* acquiring its equitable title). The manual states that the trustee is not necessarily required to concurrently execute and deliver the foreclosure sale deed, because the purchaser is deemed to have equitable title after the sale. The execution of the actual trustee's deed (perhaps occurring later) transfers only the interest that the mortgagor had in the property at the time of the execution of the deed, which would be considered inferior and unenforceable *vis-a-vis* the superior rights of the purchaser. *See* WILLIAM H. LOCKE, JR., ET AL., TEXAS FORECLOSURE MANUAL 14-16 (3d ed. 2014). This seems consistent with the statements of the Fifth Circuit in *Glenn*, to the effect of, "mere delivery of the deed would unite the legal title with the equitable and superior title already vested in the [purchaser]." *Glenn*, 80 F.2d at 557.

During oral argument, the Debtor relied heavily on *In re Nguyen*, No. 10–42499–DML-13, 2011 WL 110903 (Bankr. N.D. Tex. Jan. 13, 2011), a case that is factually very similar but distinguishable from the case at bar in one noteworthy aspect—in *Nguyen,* there was ambiguity as to the timing of the bankruptcy petition relative to the execution of the substitute trustee's deed. In *Nguyen*, the debtor's homestead was foreclosed upon on April 6, and the debtor filed a bankruptcy petition on April 7. But the evidence before the court reflected that the trustee had executed the deed on April 7—and it was not clear whether the trustee executed and delivered it before or after the debtor filed his bankruptcy petition on April 7. *Nguyen*, 2011 WL 110903, at *5. The court believed that this timing mattered. The court refused to grant a motion to lift the stay that the lender had filed, apparently seeking to take possession of the property, and instead instructed the parties to set the matter for a further evidentiary hearing. *Id.* at *7.

For multiple reasons, the court declines to follow the suggestion of *Nguyen* (that non-delivery of the trustee's deed—after a foreclosure sale and prior to a bankruptcy petition—may impact whether the debtor still has meaningful rights in foreclosed property). First, in *Nguyen*, the court cited with approval the case of *Gomez v. Kamper Invs., LLC ( In re Gomez)*, 388 B.R. 279 (Bankr. S.D. Tex. 2008) ("For a thorough analysis of whether legal title transferred to a purchaser as a result of a foreclosure sale conducted one day prior to the property owner filing for bankruptcy, see *In re Gomez*, [where] the bankruptcy court held the foreclosure sale was not complete prior to the bankruptcy petition and the property was part of the debtor's bankruptcy estate."). On appeal, the district court reversed the *Gomez* bankruptcy court on this particular issue. The district court held that, even though the trustee's deed had not been signed or recorded prior to the bankruptcy filing: (i) equitable title transferred to the purchaser when the bid was accepted at the prepetition foreclosure sale; and (ii) the debtors' rights in the property terminated under section 1322(c)(1) of the Bankruptcy Code when the property was sold at the prepetition foreclosure sale. *Kamper Invs., LLC v. Gomez*, No. M-08-155, 2009 U.S. Dist. LEXIS 130715 (S.D. Tex. Mar. 31, 2009).[5] Second, neither the *Nguyen* or *Gomez* opinions mention the old Fifth Circuit *Glenn* opinion (discussed above), which this court considers relevant and controlling on this point (*i.e.,* on the point of the insignificance of "delivery" or "recordation" of the substitute trustee's deed, as to when a foreclosure sale is completed). Third, the court considers irrelevant *in a foreclosure context* the cases discussed in *Gomez* that emphasize the significance of the act of "delivery"— *i.e.,* a writing signed by a grantor and delivered to a grantee—in the context of *general, voluntary conveyances of real property*. Specifically, the *Gomez* case recited black letter law for the

---

[5] For a thorough discussion of the district court's ruling in *Gomez, see Munoz v. James B. Nutter & Co. (In re Munoz)*, No. 10-31627-HCM, 2011 WL 710501, at *15 (Bankr. W.D. Tex. Feb. 22, 2011).

proposition that for "any interest in real property to be transferred, the conveyance must be 'in writing, signed by the grantor and delivered to the grantee'" and that a "conveyance is effective and title is transferred when the following has occurred: (1) execution of the deed, and (2) delivery of the deed." *Gomez*, 388 B.R. at 283 (and cases cited therein); *see also* TEX. PROP. CODE ANN. § 5.021 (West 2017). However, all of the cases cited in *Gomez* for this black law letter proposition involved voluntary transfers of property—not transfers/deliveries in the context of foreclosures.

In any event, the undisputed evidence in the case at bar shows that the Substitute Trustee, on April 5, 2016: (a) conducted the foreclosure sale (offering the Property for bids), on behalf of the Loan Servicer and the Lender; (b) made a credit bid on behalf of the Lender; and (c) accepted the credit bid on behalf of the Loan Servicer and the Lender. Pursuant to the power of sale granted by the Debtor, the Substitute Trustee, also on April 5, 2016, executed the Substitute Trustee's Deed on the Lender's behalf (and a notary witnessed same). While this court does not believe the applicable case law dictates that "delivery" of a trustee's deed is necessary to divest a debtor of her property interests in a ***foreclosure*** context, the summary judgment evidence nevertheless does ***not*** create a fact issue that delivery did ***not*** occur here. Clearly the Substitute Trustee had authority to act as both purchaser and seller and "delivered" the Substitute Trustee's Deed to the purchaser (*i.e.,* the Lender) when he executed the Substitute Trustee's Deed and had it notarized on the day before the Debtor filed bankruptcy.

Assuming for the sake of argument that delivery of the Substitute Trustee's Deed was a necessary step to completion of the foreclosure sale and termination of the Debtor's legal interest (which this court does not believe it was), the record is clear in the case at bar (unlike in the *Nguyen* case apparently) that the Substitute Trustee executed and had notarized the Substitute Trustee's

Deed *the day before* the Debtor filed for bankruptcy. The clarity that the court sought in *Nguyen,* by ordering an evidentiary hearing, is not lacking in this case.

In summary, even if delivery of the Substitute Trustee's Deed was a crucial act necessary to divest the Debtor of legal title (and this court does not believe it was), the summary judgment evidence is not genuinely in dispute and reflects that delivery of the Substitute Trustee's Deed to the Lender occurred in the case at bar on the day before the Debtor's bankruptcy petition was filed.[6] Accordingly, there was no automatic stay violation when the Lender—six days after the petition date—recorded the Substitute Trustee's Deed. The recordation of the Substitute Trustee's Deed was a mere ministerial act that reflected an earlier transfer of the Property.

### B. The Insignificance of Failure to Record the Deed Prepetition: the Debtor, Charged with Inquiry Notice, Cannot Avoid the Foreclosure Sale.

As earlier noted, the Debtor not only challenged whether **delivery** of the Substitute Trustee's Deed was effectuated (and argued that lack of delivery would have failed to terminate her interests in the Property), but also argued that failure to **record** the Substitute Trustee's Deed prior to the petition date was problematic. The Debtor cites authority in her Response that is distinguishable on the facts and fails to persuade the court that failure to record the Substitute Trustee's Deed was problematic in the case at bar.

The Debtor's assertion that the foreclosure sale was incomplete at the time of bankruptcy because the deed had not been recorded hinges mainly upon a single citation to a very old case, *Steffian v. Milmo Nat'l Bank*. 6 S.W. 823, 824 (Tex. 1888). *Steffian* did not involve a bankruptcy case. It involved the question of whether a bank (Milmo) that accepted a deed to real property as

---

[6] In her briefing and at oral argument, the Debtor relied on additional cases that the court will not address in depth because they add nothing relevant to the analysis here. *E.g.*, *In re Elam*, 194 B.R. 412 (Bankr. E.D. Tex. Feb. 15, 1996) (presenting distinguishable facts and procedural posture and seemingly overruled by *In re Hamilton*, 125 F.3d 292 (5th Cir. 1997), discussed below); *Bayoud v. Mims (In re Bayoud)*, No. CIV.A.3:97-CV-3109-P, 1998 WL 224718 (N.D. Tex. Apr. 27, 1998) (factually distinguishable).

security from a borrower (Hunt) had priority as a bona fide purchaser over a party (Steffian) who had earlier sold the real property on an installment basis to Hunt, prior to Hunt conveying a security interest in the real property to the bank/Milmo. In *Steffian*, the original/earlier seller had given Hunt the physical deed prior to Hunt making all of his installment payments to Steffian/seller— but allegedly there was an "understanding" between Steffian/seller and Hunt that the deed was in "possession" of Steffian until the purchase price for the real property had been paid by Hunt in full to Steffian/seller. There was arguably no way for the subsequent bank lender (Milmo) to know that Hunt had not yet paid the full purchase price to Steffian/seller and that Hunt did not have ownership of the real property to grant a security interest in it to bank (Milmo). The question was whether bank (Milmo) was a bona fide purchaser with regard to the security interest in the real property and the Texas Supreme Court held that it was not—because the seller/Steffian did not have the intent to convey the real property to Hunt with the delivery of the deed at the time of the sale and partial payment of the purchase price by Hunt. The court fails to see how this helps the Debtor in the case at bar at all.

In any event, the Debtor has not submitted sufficient summary judgment evidence to demonstrate that a hypothetical bona fide purchaser would have lacked inquiry notice of the foreclosure sale, so she cannot exercise the trustee's strong-arm powers under section 544(a)(3) of the Bankruptcy Code to avoid the foreclosure.

To be clear, the Bankruptcy Code grants a trustee "strong-arm powers" to avoid an incomplete transfer of real property that a bona fide purchaser of the property could avoid. 11 U.S.C. § 544(a)(3); *Nguyen*, 2011 WL 110903, at *6. The Fifth Circuit recognizes that section 522(h) of the Bankruptcy Code "specifically grants [Chapter 13] debtors standing to avoid certain involuntary transfers of exempt property, such as a homestead, if the trustees have not themselves

attempted to avoid the transfers." *Realty Portfolio, Inc. v. Hamilton (In re Hamilton)*, 125 F.3d 292, 297 (5th Cir. 1997) (citing 11 U.S.C. § 544(a)(3)). Under Texas law, a hypothetical purchaser would gain good title to the property after it was sold at a valid foreclosure, but before the substitute trustee's deed was recorded, ***unless*** the purchaser had ***implied knowledge*** of the foreclosure. *Id.* at 299 (emphasis added) (citing TEX. PROP. CODE. ANN. § 13.001(a)). Actual knowledge of the foreclosure is irrelevant; the central issue is whether a hypothetical purchaser would be charged with ***implied*** knowledge of the foreclosure by either ***constructive*** or ***inquiry notice***. *Id.* Debtors bear the burden of proof under section 544(a)(3) of the Bankruptcy Code to show that they stepped into the shoes of a hypothetical bona fide purchaser ***without notice***. *Munoz*, 2011 WL 710501 at *13-14 (emphasis added). Under what has become known as "the *Hamilton* framework," to achieve bona fide purchaser status, the Debtor must prove a hypothetical bona fide purchaser on the date of her bankruptcy petition would have had ***neither*** constructive ***nor*** inquiry notice of the foreclosure. *Id.* at *8.[7]

The Debtor's section 544(a)(3) theory is that, because the Substitute Trustee's Deed was not delivered or recorded until after she filed a bankruptcy petition, a hypothetical purchaser could "rely on the absence of any record of the substitute trustee's deed in the chain of title" and acquire

---

[7] In *Hamilton*, a Chapter 13 debtor filed a petition for relief three days after his homestead was sold in foreclosure. The purchaser did not file and record the substitute trustee's deed until eleven days after the petition for relief. The debtor filed an adversary proceeding seeking to set aside the foreclosure under section 544(a)(3) of the Bankruptcy Code, utilizing section 522(h) of the Bankruptcy Code. The Fifth Circuit reversed the bankruptcy court's ruling that the foreclosure sale should be avoided. The Fifth Circuit remanded the proceeding to the bankruptcy court for a determination of whether a "reasonably diligent inquiry" into the recorded deed of trust and "exercise of the means of information at hand" on the date of the petition for relief would have revealed facts sufficient to place a hypothetical bona fide purchaser for value under section 544(a)(3) of the Bankruptcy Code on notice of the foreclose sale and substitute trustee's deed. *Hamilton* provides the analytical framework that the Fifth Circuit and lower courts continue to apply in cases where the petition for relief is filed after the foreclosure sale but before the purchaser records the substitute trustee's deed. In the case at bar, the Defendants properly assert that *Hamilton* controls and that the analytical framework established by the Fifth Circuit should lead the court to conclude that the Debtor is charged with notice and cannot assert the statutory-avoidance powers because she failed to establish a fact issue as to her status as a hypothetical bona fide purchaser.

the Property without notice of the foreclosure. She argues that, stepping into the shoes of a hypothetical purchaser, she would have neither actual, nor constructive, nor inquiry notice of the sale. But simply because a substitute trustee's deed remains unrecorded when the debtor files bankruptcy does not confer upon a debtor bona fide purchaser status. Were it that simple, the Fifth Circuit would not have conducted a lengthy notice analysis in *Hamilton*. 125 F.3d at 299-302. Instead, according to the Fifth Circuit, an unrecorded substitute trustee's deed eliminates *only* the constructive notice analysis:

> Under Texas law, constructive notice is given by properly recorded instruments and charged to a person as a matter of law, regardless of the person's actual knowledge . . . The substitute trustee's deed . . . was not recorded by the date of the bankruptcy petition filing. On the date of the bankruptcy petition, a hypothetical purchaser could not be charged with constructive notice of the substitute trustee's deed, as a matter of law.

*Id.* at 299 (citing TEX. PROP. CODE. ANN. §§ 13.001, 13.002). Here, as in *Hamilton*, the Substitute Trustee's Deed remained unrecorded, so a hypothetical purchaser could not be charged with constructive notice. But the question of ***inquiry notice*** still remains.

In Texas, inquiry notice is triggered by notice of facts that would put a reasonably prudent person on a duty of inquiry. *Id.* Knowledge of a recorded interest in real property puts a subsequent purchaser under a duty to make a reasonable inquiry into the status of that interest. *Id.* At a very minimum, constructive notice of a recorded deed of trust puts a subsequent purchaser under a duty to make a reasonable inquiry into the status of that deed. *Id.* But to achieve the status of a bona fide purchaser, the debtor must show that even a comprehensive, in-depth examination of the complete chain of title and all recorded instruments referenced therein would still ***not*** give notice of the foreclosure to a hypothetical purchaser. As the Fifth Circuit noted in *Hamilton*:

> [A] purchaser is bound by every recital, reference, and reservation contained in or fairly disclosed by any instrument which forms an essential link in the chain of title under which he claims . . . The rationale of the rule is that any description, recital

of fact, or reference to other documents puts the purchaser upon inquiry, and he is bound to follow up this inquiry, step by step, from one discovery to another and from one instrument to another, until the whole series of title deeds is exhausted and a complete knowledge of all the matters referred to and affecting the estate is obtained.

*Id.* at 300 (citing *Westland Oil Dev. Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903, 908 (Tex. 1982)).

Here, the Debtor concedes that the original Deed of Trust was recorded in the Official Records of Dallas County in 2004. The Defendants argue, and the court agrees, that a reasonable inquiry into the status of the Deed of Trust would have provided notice of the foreclosure sale. On the date of the bankruptcy petition, an examination of the records would have revealed that a deed of trust encumbered the Property, but no release of lien had been filed. A step-by-step inquiry would have led a hypothetical purchaser to locate the 2012 assignment of the Deed of Trust from CTX to the Lender. A reasonable purchaser would check the rest of the property records and see two appointments of substitute trustee on file, as well. At this point, a simple inquiry to either the Defendants or the Substitute Trustee would reveal that the Lender had already purchased the home at foreclosure. Or, a hypothetical purchaser would know it is standard practice for lenders to appoint a substitute trustee who specializes in foreclosures. With this knowledge, a prudent purchaser might check with the County to see if the subject property had been scheduled for foreclosure sale. There are many reasonable steps a hypothetical purchaser could have taken to obtain "complete knowledge of all matters referred to and affecting the estate," including contacting the County, contacting the current Lender, or even contacting the Debtor, who received separate notices of foreclosure addressed to herself and her husband. The foreclosure process is designed to give ample notice to the world, and here, the summary judgment evidence is undisputed that the Defendants were diligent in conducting the foreclosure and providing the required notices. Texas law requires subsequent purchasers to be methodical and exhaustive in

their inquiry—it does not confer bona fide purchaser status upon Chapter 13 debtors simply because a cursory investigation shows a substitute trustee's deed was not yet recorded at the time of the bankruptcy filing.

C. **The Defendants Did Not Violate the Automatic Stay by Recording the Deed Postpetition.**

Finally, the Debtor's allegations that the Defendants violated the automatic stay as a matter of law pursuant to either 11 U.S.C. § 362(a)(1), (3), or (6) fail because the foreclosure sale and execution of the Substitute Trustee's Deed terminated the Debtor's rights in the Property the day before she filed for bankruptcy. Section 362(a)(3) of the Bankruptcy Code stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," but the bankruptcy estate consists of "all legal and equitable interests of the debtor in property as of the commencement of the case" (11 U.S.C. § 541(a)(1)), and the Debtor had no cognizable interest in the Property as of the commencement of this case. Section 362(a)(1) of the Bankruptcy Code stays the commencement or continuation of an action against the debtor or to recover a claim against the debtor that arose before the commencement of the case, and section 362(a)(6) of the Bankruptcy Code similarly stays "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case." Recording a substitute trustee's deed to property purchased at a prepetition foreclosure sale does not equate to commencing or continuing an action against a bankruptcy debtor. Neither have the Defendants sought nor has the Debtor alleged any attempt to collect a prepetition debt from the Debtor. Thus, the court rejects the Debtor's allegation that the Defendants violated the automatic stay by filing the Substitute Trustee's Deed with the property records of Dallas County postpetition. For the Debtor's allegation to hold water, the Property would have to be part of the bankruptcy estate. But, as discussed above, the foreclosure sale terminated the Debtor's rights to the Property the day

before she filed for bankruptcy. The Property never accrued to the bankruptcy estate and thus was not subject to the statutory restraint of the automatic stay.

## IV. CONCLUSION

In summary, the court concludes that the Defendants have met their burden of demonstrating that no genuine issue of material fact exists in this Adversary Proceeding. The foreclosure sale terminated the Debtor's cognizable interests in the Property before she filed for bankruptcy. The Property was not subject to the protection of the automatic stay and the Defendants did not violate the stay by recording the Substitute Trustee's Deed postpetition. Furthermore, the Debtor fails in her attempt to avoid or reverse the foreclosure through the strong-arm powers provided under section 544 of the Bankruptcy Code. The original Deed of Trust would have put a hypothetical purchaser under a duty to make a reasonable inquiry into the status of the Property, which would have revealed that a foreclosure sale had occurred. The Debtor has not come forward with summary judgment evidence that, if true, might support a judgment in her favor. Thus, the Defendants are entitled to judgment as a matter of law. Wherefore, it is

**ORDERED** that the Defendants' Motion for Summary Judgment is **GRANTED**; and it is further

**ORDERED** that the Defendants shall submit a form of Judgment consistent herewith.

### ###END OF ORDER###